**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

February 23, 2024

A. Thompson Bayliss, Esquire
Abrams & Bayliss, LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Thomas A. Uebler, Esquire
McCollom D'Emilio Smith Uebler, LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808

RE: ***OrbiMed Advisors LLC, et al. v. Symbiomix Therapeutics, LLC, et al.,***
Civil Action No. 2023-0769-MTZ

Dear Counsel:

This letter decision answers one question in a noisy advancement dispute. It explains that defendant Lupin, Inc. is obligated to provide advancement under indemnification agreements between the plaintiffs and a company that Lupin first acquired, then cancelled. Answering this question cuts down on some of the noise, but not all of it. This letter therefore also charts a course forward to resolve remaining disputes.

## I. BACKGROUND[1]

Symbiomix Therapeutics, LLC was a pharmaceutical company founded by John Gregg. In 2012, Gregg sought financing for Symbiomix, with legal assistance

---

[1] Citations in the form of "Am. Compl." refer to the plaintiffs' verified amended and supplemental complaint for advancement, available at docket item ("D.I.") 17. Citations in the form of "Am. Countercl." refer to defendant Lupin's answer and amended

from Cooley LLP. Plaintiff OrbiMed Advisors, LLC invested in Symbiomix, and obtained the rights to designate members of Symbiomix's board of managers (the "Board") and to terminate Gregg without cause.[2] OrbiMed appointed plaintiffs Rishi Gupta and Klaus Veitinger (together, the "Manager Plaintiffs") to the Board; Veitinger was also Symbiomix's CEO.[3]

The Manager Plaintiffs entered into substantively identical indemnification agreements with Symbiomix dated May 3, 2013 (the Indemnification Agreements or "IAs").[4] The IAs offered the Manager Plaintiffs and OrbiMed, as an express third-party beneficiary, broad advancement rights.[5] "To induce [the Manager Plaintiffs] to provide services to [Symbiomix], and OrbiMed to commit resources as

---

counterclaims, available at D.I. 27. Citations in the form of "POB" refer to the plaintiffs' pretrial opening brief, available at D.I. 61. Citations in the form of "DAB" refer to Lupin's pretrial answering brief, available at D.I. 66. Citations in the form of "PRB" refer to the plaintiffs' pretrial reply brief, available at D.I. 72. Citations in the form of "Joint Stip." refer to the parties' joint pretrial stipulation, available at D.I. 76. Citations in the form of "IA" refer to the Indemnification Agreement, which is joint trial exhibits ("JX") 1 and 2. Citations in the form of "OAA" refer to the Omnibus Acquisition Agreement, which is JX 3.

[2] JX 7 ¶ 65.j.

[3] Joint Stip. ¶ 3; D.I. 85 at 91 [hereinafter "Tr."].

[4] Joint Stip. ¶¶ 3–4; *see also* IA.

[5] IA § 4.

an actual or potential stockholder in or lender to the Company,"[6] the IAs "provide for the indemnification of, and the advancement of expenses to, [the Manager Plaintiffs] and [OrbiMed] to the maximum extent permitted by applicable law, as set forth [in the IAs]."[7] Each IA is "binding upon the parties . . . and their respective successors."[8]

In November 2013, the Board terminated Gregg's Symbiomix employment,[9] causing him to lose his Board seat.[10]

### A. Lupin Purchases Symbiomix's Equity.

On May 1, 2017, Lupin, Symbiomix, and other parties entered into an Omnibus Acquisition Agreement (the "OAA").[11] Gregg contends that in his absence from Symbiomix, the OAA was negotiated to favor Symbiomix's investors at Gregg's expense: Gregg might not receive any payment from the sale of the

---

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.*; *id.* § 14.

[9] JX 46 ¶ 4; *see* JX 7 ¶ 65.v.

[10] JX 7 ¶ 65.p.

[11] Joint Stip. ¶¶ 5–6.

company he founded.[12]  Gregg began investigating and sent Symbiomix a books and records demand on September 21, 2017.[13]

On October 11, the OAA closed:  Lupin acquired all of Symbiomix's equity, and the Manager Plaintiffs ceased serving as managers of Symbiomix.[14]  In the OAA, Lupin promised to indemnify and advance expenses for current and former Symbiomix managers and officers (the "M&O Indemnified Persons") "against any and all Damages incurred or suffered by any of the M&O Indemnified Persons in connection with any action taken in such individual's capacity as an officer or manager of the Company" until six years after the OAA's closing date.[15]

On October 17, Lupin asked the Food and Drug Administration (the "FDA") to transfer ownership of Symbiomix's new drug application to Lupin, and on

---

[12] JX 7 ¶ 72 ("Mr. Gregg has been notified that he will not be paid anything as a result of the Symbiomix Sale immediately, and that he will not receive any payment from the Symbiomix Sale, if any, for from six to up to ten years."); *see* JX 18 at LUP_00003542 ("As you are aware, although Mr. Gregg was the inventor of Solosec and was the largest individual unit-holder in Symbiomix, he has yet to receive any value for his interests in Symbiomix and his intellectual property despite the fact that Lupin purchased the company for more than $150 million.").

[13] Joint Stip. ¶ 7; JX 5.

[14] Joint Stip. ¶ 9.

[15] OAA § 5.4(a).

November 16 the FDA notified Lupin it had "revised [its] records to indicate Lupin Inc. as the applicant of record."[16]

## B. Gregg Files A Claim Against Cooley And Seeks Discovery Regarding Plaintiffs.

On October 26, Gregg filed an action in New Jersey (the "New Jersey Action") against Cooley based on its role in Symbiomix's 2012 financing and alleged continued representation of Symbiomix after Gregg's termination.[17] Gregg alleged that OrbiMed and other investors hijacked Cooley's representation of Gregg, that Cooley breached its duties to Gregg, and that the investors' scheme with Cooley robbed Gregg of his rightful proceeds from the sale of Symbiomix.

On March 12, 2018, Gregg served a subpoena on Lupin seeking "all documents which refer or relate to OrbiMed" and

> all documents which refer or relate to any communication between any employee, officer, member, board member . . . of Symbiomix and any employee, officer, member, board member, shareholder of OrbiMed Advisors, including without limitation: a. Klaus Veitinger, MD; b. Rishi Gupta, JD; c. Evan Sotiriou; d. Donald Bennett; e. Daniel Gordon. [18]

---

[16] JX 8 at LUP_00016287.

[17] *See* Joint Stip. ¶ 10; JX 7 ¶¶ 54, 65.

[18] JX 9 ¶¶ 20, 35; *see* Joint Stip. ¶ 13.

In October 2019, the Manager Plaintiffs' counsel began discussions with Lupin's counsel regarding their indemnification and advancement rights.[19]

### C.     Lupin Dissolves And Cancels Symbiomix.

On "August 22, 2019, Symbiomix's bank account was closed," and its entire $122,000 balance was "deposited into an account controlled by Lupin."[20]   On December 18, Lupin's CEO, serving as Symbiomix's sole director, "declared that Symbiomix be liquidated and dissolved; appointed Sean Moriarty as the liquidator of Symbiomix . . . ; and directed any officer of Symbiomix to file a Certificate of Cancellation with the Delaware Secretary of State."[21]

On December 29, Symbiomix's rights, titles, and interests in its patents and trademarks were assigned to Lupin.[22]   On December 30, Symbiomix filed a certificate of cancellation.[23]

---

[19] JX 17 at LUP_00001943.

[20] Joint Stip. ¶ 14.

[21] *Id.* ¶ 16.

[22] *Id.* ¶¶ 17–18.

[23] *Id.* ¶ 19.

### D.     Plaintiffs Seek Advancement From Lupin And Symbiomix.

By letter dated July 10, 2020, the Manager Plaintiffs formally demanded advancement from Lupin and Symbiomix (the "Defendants") under the IAs and OAA "in connection with their potential role as third-party witnesses in the New Jersey Action."[24]  By letter dated July 27, Lupin's counsel asserted the request under the IAs was unripe because the Manager Plaintiffs had not yet been subpoenaed.[25] The parties exchanged several letters on that point through which Lupin repeatedly acknowledged OrbiMed, Gupta, and Veitinger's (the "Plaintiffs") rights under Indemnification Agreements and Omnibus Acquisition Agreement.[26]     Although Symbiomix had already been cancelled, Lupin's counsel also purported to speak for Symbiomix, and stated Symbiomix also acknowledged the IAs and its obligations and rights thereunder.[27]

---

[24] *Id.* ¶ 20; *see* JX 29.

[25] Joint Stip. ¶ 21; *see* JX 31.

[26] *E.g.*, JX 70; JX 93 at LUP_00002893, 96; JX 94; JX 98; JX 41 at LUP_00004688; *see* Joint Stip. ¶ 31.

[27] Joint Stip. ¶¶ 32, 34; JX 31; JX 78; JX 94 at LUP_00002889–91.

Symbiomix purported to retain and respond through counsel until the pretrial conference in this matter.  At that point, counsel understood it could not be retained by a cancelled entity, and withdrew its appearance for Symbiomix.  Tr. 8 (citing *In re Reinz Wis. Gasket, LLC*, 2023 WL 3300042 (Del. Ch. May 8, 2023)); *In re Reinz Wis. Gasket, LLC*, 2023 WL 3300042, at *2 (Del. Ch. May 8, 2023) ("Cancellation precludes a defunct entity

In June 2022, Gregg served subpoenas on the Manager Plaintiffs.[28] On July 27, he notified OrbiMed it could also expect a subpoena, which it received on October 31.[29] Plaintiffs told Lupin about the subpoenas and that they had retained counsel and sought indemnification and advancement for their expenses.[30] Lupin's counsel continued to purport to speak for Symbiomix, and referenced the two companies interchangeably. Lupin's counsel acknowledged Lupin's obligations under the IAs.[31]

On February 13, 2023, Lupin agreed to "advance [the Manager] Plaintiffs' reasonable attorneys' fees and expenses incurred in responding to the subpoenas served on them in the New Jersey Action."[32] By letter dated March 22, counsel

---

from retaining counsel and litigating before a receiver is appointed, even in a proceeding in which it must be named as a respondent."). Lupin presented the entire defense of this matter at trial.

I note Symbiomix was purportedly served via its registered agent on July 31, 2023. D.I. 3. A cancelled entity cannot be served in that manner. *Tratado de Libre Commercio, LLC v. Splitcast Tech., LLC*, 2019 WL 1057976, at *1 (Del. Ch. Mar. 16, 2019) ("The entity no longer has a registered agent . . . upon whom personal service could be perfected.").

[28] Joint Stip. ¶ 25.

[29] *Id.*; *see* JX 60–61.

[30] Joint Stip. ¶ 26.

[31] *E.g.*, JX 41 at LUP_00004688–89; JX 90; JX 93 at LUP_00002893; JX 98; Joint Stip. ¶ 31.

[32] Joint Stip. ¶ 27.

wrote that, "pursuant to the [IAs],"[33] Symbiomix would "advance OrbiMed's reasonable attorneys' fees and expenses incurred" in connection with the New Jersey Action.[34] Lupin requested undertakings pursuant to Section 8 of the IAs, which Plaintiffs submitted to Lupin and Lupin accepted.[35] On June 2, Lupin again confirmed that "Symbiomix and/or Lupin are . . . obligated to . . . indemnify Mr. Gupta, Mr. Veitinger and/or OrbiMed for their reasonable attorneys' fees and expenses."[36] "During the period of July 27, 2020, through and including August 14, 2023, Defendants" never raised "Symbiomix's certification of cancellation" as a defense against advancement.[37]

On April 19, 2023, Plaintiffs sent Lupin their undertakings and invoices.[38] Plaintiffs retained Sidley Austin LLP as lead counsel and McElroy, Deutsch, Mulvaney & Carpenter, LLP as local counsel in connection with the New Jersey subpoenas, and demanded Lupin advance them $273,737.21.[39] While Section 8 of

---

[33] JX 78 at LUP_00003099; *see* Joint Stip. ¶ 28.

[34] Joint Stip. ¶ 28.

[35] *Id.* at ¶ 29; JXs 89–91. *See generally* JX 88; JX 92 at LUP_00002984–88.

[36] JX 94 at LUP_00002889; *see* Joint Stip. ¶ 31.

[37] Joint Stip. ¶ 32.

[38] JX 92 at LUP_00002984–85; JX 93 at LUP_00002893.

[39] *See* JX 98 at 1; *see, e.g.*, JX 104 at 3.

the IA requires advancement within thirty days after the receipt of invoices, Lupin took months to respond.[40]  On June 23, the parties met; Lupin compared Plaintiffs' fees to "amounts incurred by other nonparties" for the same action and questioned the reasonableness of their expenses.[41]  Lupin refused to advance Plaintiffs more than $75,000.[42]

### E.    This Action Ensues.

On July 27, Plaintiffs filed their Verified Complaint for Advancement against Symbiomix and Lupin.[43]  On August 15, Lupin's counsel filed an answer and counterclaims, asserting for the first time Symbiomix lacked the capacity to be sued due to its cancellation.[44]  On August 21, Plaintiffs moved for leave to file an amended and supplemental complaint, seeking to address Symbiomix's cancellation;[45] Plaintiffs filed their amended complaint on August 23.[46]  The amended complaint includes four counts:  Count I for breach of the IAs; Count II for breach of the OAA;

---

[40] *See generally* JX 93.

[41] JX 98 at 1–2; JX 97 ¶ 9.

[42] JX 97 ¶ 9.

[43] Joint Stip. ¶ 33.

[44] D.I. 8 at 1 n.1, 15.

[45] D.I. 12 at Mot.

[46] Am. Compl.

Count III for fees on fees; and Count IV for the nullification of Symbiomix's certificate of cancellation.[47]

On August 23, Plaintiffs adjusted the expenses sought from $273,737.21 to $215,628.73.[48] On August 28, Lupin advanced $215,628.73 to Plaintiffs for attorneys' fees and expenses Plaintiffs incurred in connection with the New Jersey Action.[49]

On September 6, Lupin's counsel filed an answer and amended counterclaims. The counterclaims comprise Count I for breach of the IAs and OAA, seeking repayment of advanced expenses, and Count II for declaratory judgment that indemnification and advancement rights under the IAs expired on October 11, 2017, that any other advancement rights were provided by the OAA, and that those rights terminated on October 11, 2023.[50]

In their pretrial briefs, Plaintiffs identified Counts II and IV as claims in the alternative, should the Court not order Lupin to perform under the IAs.[51] Lupin

---

[47] *Id.* at ¶¶ 49–65.

[48] *See* JX 98; Am. Compl. ¶ 14.

[49] JX 98; *see* Joint Stip. ¶ 36.

[50] Am. Countercl. ¶¶ 14–48.

[51] POB 45–46.

limited its relief sought to declaratory judgment, fees on fees, and an order "for further proceedings with respect to Lupin's counterclaim for breach of contract."[52] Trial was held on November 16.[53]

Judgment is entered in favor of Plaintiffs on their Counts I and III and on Lupin's counterclaim Count II: the IAs have not terminated, and Lupin assumed Symbiomix's obligations under the IAs. I do not reach Plaintiffs' alternative Counts II and IV.

Even though this matter went to trial, the parties still have work to do. Lupin disputes whether some, or perhaps even all, of Plaintiffs' invoiced expenses should be covered under the IAs.[54] The parties did not equip the Court to resolve this issue, and in fact Lupin sought further proceedings to address it, which Plaintiffs did not oppose at trial. This letter answers what it can, and leaves the rest for another day.[55]

---

[52] DAB 32–33.

[53] *See* Tr.

[54] DAB 11–12 (arguing "there is growing evidence that some or all of the conduct in the New Jersey Action is not a 'Covered Event'"); *id.* at 13 ("Lupin has never disputed that the non-par[t]y subpoenas issued in the New Jersey Action trigger Plaintiffs' right to advancement."); PRB 4 (reading Lupin to concede "that the New Jersey Action at least in part presents a Covered Event").

[55] Litigants reading this letter in the future should not adopt Lupin's unilateral bifurcation as a model for how to proceed. The Court held a trial in this action; that trial should have addressed any dispute over whether Plaintiffs' invoices to date should be covered. The

## II.    ANALYSIS

A gating issue in this action asks whether the IAs' advancement rights and obligations terminated when the Manager Plaintiffs ceased serving as managers of Symbiomix, and the extent to which Lupin assumed any Symbiomix indemnification obligations to Plaintiffs.   In so many words, the parties dispute whether any advancement right exists today, given the Manager Plaintiffs' intervening departure from the Board and the intervening OAA.

Plaintiffs bear the burden of demonstrating the existence of a contractual advancement right.[56]   While "Delaware policy favors indemnification and advancement,"[57] "[t]he public policy in favor of advancement rights . . . does not

---

parties in this action are encouraged to resolve that issue without drawing on additional judicial resources.

[56] *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 82, 86–87 (Del. 1998) (affirming the Court of Chancery's holding that the plaintiff "failed to prove the existence of an indemnification agreement" and so failed to establish a contractual right to advancement of his litigation expenses in the two pending actions); *Lagrone v. Am. Mortell Corp.*, 2008 WL 4152677, at *1, 6 (Del. Super. Sept. 4, 2008) (holding the plaintiffs had the burden of establishing a valid indemnification agreement existed, then concluding they failed to meet that burden because the party seeking indemnification relied upon a contract to which it was not a party and sought to impose indemnification obligations against defendants with whom it "maintained no contractual relationship").

[57] *Blankenship v. Alpha Appalachia Hldgs. Inc.*, 2015 WL 3408255, at *18 n.147 (Del. Ch. May 28, 2015) (quoting *Miller v. Palladium Indus., Inc.*, 2012 WL 6740254, at *3 (Del. Ch. Dec. 31, 2012)).

trump basic principles of contract interpretation."[58]  When determining whether an advancement right or obligation exists, "I give priority to the intention of the parties," and "start by looking to the four corners of the contract to conclude whether the intent of the parties can be determined from its express language."[59]  "When the contract is clear and unambiguous, [I] will give effect to the plain-meaning of the contract's terms and provisions"[60] with the aid of interpretive canons.[61]  I must "lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory."[62]  And, any ambiguities will be resolved in favor of indemnification and advancement.[63]

---

[58] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 592–93 (Del. Ch. 2006).

[59] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

[60] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010).

[61] *Bouchard v. Braidy Indus.*, 2020 WL 2036601, at *9 (Del. Ch. Apr. 28, 2020) ("[T]he court evaluates the relevant provision's semantics, syntax, and context, aided by interpretive canons.").

[62] *Osborn*, 991 A.2d at 1159 ("We will read a contract as a whole, and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.  We will not read a contract to render a provision or term 'meaningless or illusory.'"); *see* Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts* [hereinafter "*Reading Law*"] 174 (2012) (quoting Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 58 (1868)).

[63] *Blankenship*, 2015 WL 3408255, at *17, *18 n.147 (quoting *Miller v. Palladium Indus., Inc.*, 2012 WL 6740254, at *3 (Del. Ch. Dec. 31, 2012)).

### A.     The IAs Did Not Terminate When The Manager Plaintiffs Left The Board.

Whether the IAs' obligations continued after the Manager Plaintiffs left the Board on October 11, 2017, is sourced in and resolved by the IAs' plain text. The IAs are full of indicia that they offer advancement to the Manager Plaintiffs and OrbiMed even if they had not yet become, or were no longer, managers or a stockholder, respectively. The IAs recite that they were drafted with the intention of providing advancement and indemnification "regardless . . . of . . . any change in . . . the composition of its Board of Managers."[64] They cover events related to not just OrbiMed's status as an actual stockholder, but also as a potential stockholder.[65] They cover proceedings that were pending before the IAs were executed.[66] And they define "Covered Event" to mean "any event related to . . . the fact that Indemnitee is *or was* a manager."[67]

---

[64] IA at 1.

[65] *Id.* § 1(a)(ii) (defining "Covered Event" to include any event related to "Indemnitee's position as a[] . . . potential stockholder in or lender to the Company"); *id.* § 4 ("[T]he Appointing Stockholder will be entitled to indemnification hereunder for Expenses to the same extent as Indemnitee.").

[66] *Id.* § 1(g) (defining "Proceeding" to mean any threatened, pending or completed claim, action, suit, arbitration, alternate dispute resolution process, investigation, administrative hearing, appeal, or any other proceeding . . . whether formal or informal, including . . . a Proceeding pending on or before the date of th[e] Agreement").

[67] *Id.* § 1(a) (emphasis added).

The parties' dispute is sourced in Section 14.  It reads in relevant part:

All agreements and obligations of the Company contained herein shall continue during the period Indemnitee is a manager of the Company . . . and shall continue thereafter ***so long as Indemnitee shall be subject to any current or future Proceeding*** or any proceeding commenced under § 10 . . . .  This Agreement shall continue in effect regardless of whether Indemnitee continues to serve as an officer or manager of the Company . . . .[68]

The parties dispute whether the Manager Plaintiffs were subject to a Proceeding on October 11, 2017, when they left the Board, and whether the Company's obligations under the IAs continued after that date.

Section 14 continues the IAs' advancement obligations so long as Gupta or Veitinger (individually, the "Indemnitee") is "subject to any . . . ***future*** Proceeding."[69]  The IA defines "Proceeding" to mean "any ***threatened***, pending or completed claim, action, suit, arbitration, alternate dispute resolution process, investigation, administrative hearing, appeal, or any other proceeding, whether . . . formal or informal."[70]  Thus, the Company's IA obligations continue so long as the Indemnitee is subject to any future threatened legal action.  A "threat" is "an

---

[68] *Id.* § 14 (emphasis added).

[69] *Id.* (emphasis added).

[70] *Id.* § 1(g) (emphasis added).

indication of an approaching menace; or the suggestion of an impending detriment."[71]

Gregg's books and records demand threatened a future Proceeding. Just weeks before the OAA's October 11 closing, on September 21, Gregg demanded to inspect Symbiomix books and records.[72] His demand sought agreements "for the contemplated Lupin . . . change of control transaction," "the most recent and accurate version of the Omnibus Acquisition Agreement," and "severance agreements with employees, and promised cash bonuses to Members" for the "reasonable purpose" of investigating "potential mismanagement."[73] Two weeks after the OAA closed, Gregg filed his complaint in the New Jersey Action.[74] In the context of a laches defense against a stockholder claim, this Court has recognized that seeking books and records demand is tantamount to vigilantly pursuing that claim.[75] A books and

---

[71] *Threat*, Black's Law Dictionary (11th ed. 2019).

[72] JX 5.

[73] *Id.* at LUP_00011141.

[74] Joint Stip. ¶ 7.

[75] *Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1179 (Del. Ch. 2022) ("When applying the separate accrual approach within a laches framework, the court looks to when the plaintiff began vigilantly pursuing its claims. For purposes of a derivative action, that can be when a plaintiff begins seeking books and records.").

records demand stating an intention to investigate mismanagement is an indication of an approaching suit.[76]

As Lupin puts it, "Lupin has never disputed that the non-par[t]y subpoenas issued in the New Jersey Action trigger Plaintiffs' right to advancement."[77] Gregg's books and records demand was an indication or suggestion of that approaching action.[78] It threatened a future Proceeding that would take the form of the New Jersey Action. Because the Manager Plaintiffs were subject to a Proceeding in the form of a future threatened legal action when they left the Board, the IAs' obligations did not terminate at that time. From there, the IAs are clear that they "continue in effect regardless of whether Indemnitee continues to serve as an officer or manager of the Company."[79]

---

[76] *See Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 799 (Del. Ch. 2016) (describing a Section 220 request as a "pre-suit investigation"), *abrogated on other grounds*, 214 A.3d 933 (Del. 2019); *White v. Panic*, 783 A.2d 543, 549–50, 557 (Del. 2001) (discussing the Court of Chancery's criticism of plaintiff's books and records "pre-suit investigation"); *Wei v. Zoox, Inc.*, 268 A.3d 1207, 1216 (Del. Ch. 2022) (referring to the Section 220 "purpose . . . to investigate potential claims for breach of fiduciary duty" as "the 'pre-suit investigation'").

[77] DAB 13.

[78] *Ont. Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, 294 A.3d 65, 70 (Del. Ch. 2023) (identifying that plaintiff began pursuing its claims not when the plaintiff filed suit but "when a plaintiff has engaged in diligent efforts to obtain books and records" and tying the lookback date for the case to the books and records demand); *see* IA § 14.

[79] IA § 14.

### B.    OrbiMed's IA Rights Continued.

The parties also dispute whether OrbiMed's rights under the IAs terminated when the Manager Plaintiffs left the Board.  OrbiMed, referred to in the IAs as the "Appointing Stockholder," is entitled to indemnification and advancement until a Manager Plaintiff "ceases to serve, or otherwise be involved in, any formal capacity, position or circumstance which may give rise, in whole or in part, to a Covered Event."[80]  The parties dispute the construction of this phrase.  Lupin reads "formal" to modify not only "position" and "circumstance," but also "capacity," and concludes that because the Manager Plaintiffs no longer served on Symbiomix's Board after October 11, they lacked any formal role with Symbiomix as necessary to maintain OrbiMed's rights.  Plaintiffs argue that "formal" modifies only "capacity," and that the Manager Plaintiffs still were in a "position or circumstance," which need not be "formal," that maintained OrbiMed's advancement rights.[81]

If there were any ambiguity as to whether "formal" modifies "position or circumstance," the phrase would need to be interpreted in favor of advancement.[82]

---

[80] *Id.* § 5.

[81] Tr. 12–13.

[82] *Miller v. Palladium Indus., Inc.*, 2012 WL 6740254, at *3 (Del. Ch. Dec. 31, 2012) (explaining Delaware's policy favoring advancement "supports the approach resolving ambiguity in favor of indemnification and advancement").

But there is no ambiguity: "formal" only modifies "capacity." The IA does not define the disputed terms, but the presumption of consistent usage "provides that 'absent anything indicating a contrary intent, the same [word] should be given the same meaning when it is used in different places in the same contract.'"[83]

The IAs' other uses of the words "capacity," "position," and "circumstance" indicate "formal" could only modify "capacity."[84] Each time "capacity" is used, it refers to the indemnitee's service as "a manager, officer, employee, agent and/or fiduciary of the Company."[85] "Position" is used in relation to "Indemnitee's position as an actual or potential stockholder" of Symbiomix.[86] And "circumstance" is used to refer to "facts and circumstances" at the heart of a Covered Event.[87] A "formal capacity" makes sense. A formal "position as an actual or potential stockholder"

---

[83] *Tex. Pac. Land Corp. v. Horizon Kinetics LLC*, 306 A.3d 530, 564 n.34 (quoting *JJS, Ltd. v. Steelpoint CP Hldgs., LLC*, 2019 WL 5092896, at *6 (Del. Ch. Oct. 11, 2019)); *accord* 11 Richard A. Lord, *Williston on Contracts* § 32:6 (4th ed. 2023) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons."); *Reading Law* 170–73.

[84] "Capacity" appears three times in the IA: in Section 1(a), in Section 4, and in Section 14; "position" appears twice in the IA: in Section 1(a) and in Section 4; and "circumstance" appears three times in the IA: twice in Section 1(a), and in Section 4.

[85] IA §§ 1(a), 14.

[86] *Id.* § 1(a).

[87] *Id.*

does not make sense. Neither does "facts or [formal] circumstances."[88] And the additional terms "position" and "facts and circumstances" must mean something other than "capacity," and offer a differentiated meaning if they are not themselves "formal."[89] The only reasonable interpretation of Section 4 reads "formal" to modify "capacity," but not "position" or "facts or circumstances."

Thus, the Appointing Stockholder's IA rights survived the Manager Plaintiffs' separation from their formal roles, so long as they were still involved in facts or circumstances that form the basis of claims that have been, could have been, or could be brought against them in a Proceeding.[90] Gregg's September 21, 2017 books and records demand stating an intention to investigate mismanagement, or to sue,[91] and

---

[88] *Id.* §§ 1(a), 4; *see Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) ("Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party . . . . [I]n giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract . . . . [And] [a]n interpretation is unreasonable if it 'produces an absurd result.'").

[89] *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *11 (Del. Ch. Nov. 2, 2007) ("Delaware courts . . . prefer to interpret contracts to give effect to each term rather than to construe them in a way that renders some terms repetitive or mere surplusage."); 16 Richard A. Lord, *Williston on Contracts* § 49:14 (4th ed. 2023) ("Where an insurance policy contains both the words 'sudden' and 'unexpected,' the word 'sudden' may not be interpreted to mean 'unexpected.'").

[90] IA §§ 1(a), 4.

[91] *See* JX 5 ¶¶ 13–17 (indicating Gregg's discontent with the Symbiomix sale to Lupin).

his October 24 filing of the New Jersey Action questioning various Board decisions leading up to and including the OAA,[92] present circumstances that could give rise, in whole or in part, to a Covered Event. OrbiMed's IA rights continued after the Manager Plaintiffs left the Board.

### C. Lupin Assumed Symbiomix's IA Obligations.

Having concluded that the IAs still provide Plaintiffs with advancement rights, I turn to whether Lupin is obligated to fulfill those rights. The IAs were contracts with Symbiomix, but Symbiomix was cancelled in 2019. Plaintiffs seek advancement under the IAs from Lupin as Symbiomix's successor.[93]

"It is a general principle of contract law that only a party to a contract may be sued for breach of that contract."[94] Even so, a party does not have to be a signatory to a contract to become bound by it.[95] For example, "third parties to an agreement may become parties to it, and thus be bound by it, by either expressly or implicitly

---

[92] *See* JX 7.

[93] Tr. 3 ("[U]nder the general survival term, Section 14 of the [IAs], the [IAs] travel with the assets of the business of Symbiomix. It is undisputed that Lupin took the assets and business of Symbiomix, and thereby, as a result, inherited indemnification agreements which bind it directly.").

[94] *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).

[95] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2 335, 343–44, 348 (Del. Ch. 2003).

adopting the agreement."[96]  In order for a nonsignatory to adopt a contract, the contract must provide that "the original parties intended to create or permit future contractual obligations through adoption by nonsignatories."[97]  "The contract itself . . . must contemplate that non-signatories may adopt it."[98]  If the contract permits adoption, "[t]here are no magic words to explicitly adopt a contract."[99]  Express adoption includes "when a successor adopts a contract of a predecessor as its own," and where a nonsignatory makes statements confirming it is bound by a contract.[100] Public statements by a nonsignatory's agent that the nonsignatory is bound by or must comply with an agreement "reflect [the nonsignatory's] explicit intent and consent to be bound by the [agreement]," as does a nonsignatory's letter acknowledging a contractual obligation.[101]  And, "in addition to express adoption,

---

[96] *Id.* at 343–44 (citing *Wiggins Ferry Co. v. Ohio & Miss. Ry. Co.*, 142 U.S. 396, 408 (1892)); *Wiggins Ferry Co. v. Ohio & Miss. Ry. Co.*, 142 U.S. 396, 408 (1892) (holding nonsignatory adopted contract "and made it its own").

[97] *Id.* at 344.

[98] *Id.*

[99] *In re Federal-Mogul Glob., Inc.*, 526 B.R. 567, 576 (D. Del. 2015) (citing *Am. Legacy*, 831 A.2d at 349).

[100] *Am. Legacy*, 831 A.2d at 348–49.

[101] *Id.* at 349; *id.* at 348–49 n.58 (citing *Bronx Store Equip. Co., Inc. v. Westbury Brooklyn Assocs., L.P.*, 280 A.2d 352 (N.Y. App. Div. 2001)).

non-signatories may implicitly adopt a contract through their conduct, rather than through words."[102]

The IAs contemplate that a nonsignatory may adopt them. They recite that they were drafted with the intention of providing advancement and indemnification "regardless . . . of any amendment to or revocation of the Company's LLC Charter and Operating Agreement or Bylaws . . . , [or] any change in the ownership of the Company."[103] Section 14 provides the IAs' obligations endure if another entity succeeds Symbiomix and acquires "all or substantially all of [Symbiomix's] business or assets" by "purchase, merger, consolidation, or otherwise": the "Agreement shall be binding upon . . . the parties [to it] and their respective successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business or assets of the Company)."[104] This clause "defines who is bound by the Indemnification Agreement"[105] and evinces the intent that

---

[102] *Id.* at 349.

[103] IA at 1.

[104] *Id.* § 14.

[105] *See Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *9–10 (Del. Ch. Sept. 11, 2015) (interpreting the provision "[t]his Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the Company" to define "the universe of

Symbiomix's successor by purchase, merger, or otherwise would be bound by the IAs.[106]

Lupin became a successor to all or substantially all of Symbiomix's business or assets. When the OAA closed, Lupin bought all of Symbiomix's equity, and Symbiomix continued as the surviving entity with Lupin as its sole member.[107] Before closing Symbiomix's bank account, all of its funds "were deposited into an account controlled by Lupin"; then, Lupin acquired "Symbiomix's right, title and interest in its patents" and trademarks.[108] It is a direct successor to all or substantially all of Symbiomix's business or assets.

---

parties to be bound under the Indemnification Agreement"); *Am. Legacy*, 831 A.2 at 344 (referencing a contractual provision that binds "'successors' of the original tobacco company signatories" and acknowledging the contract contemplated adoption by a successor); *Miramar Police Officers' Ret. Plan v. Murdoch*, 2015 WL 1593745, at *8 (Del. Ch. Apr. 7, 2015) (interpreting the provision "[t]his Settlement shall be binding upon and shall inure to the benefit of the parties . . . successors and assigns of all of such foregoing persons and upon any corporation, partnership, or other entity into or with which any party or person may merge or consolidate" to define the universe of persons to be bound by the terms of the settlement agreement and concluding that because the provision "does not specifically reference other obvious forms of significant corporate transactions that may involve [the company], namely, asset transfers or spin-offs," the plain terms suggested the parties "did not intend for that contract to be binding on the recipient of assets in an asset transfer").

[106] IA § 14.

[107] OAA Recitals; *id.* § 1.3; Joint Stip. ¶ 16.

[108] Joint Stip. ¶¶ 14–18.

Lupin implicitly and explicitly adopted the IAs. Symbiomix provided the IAs to Lupin before the OAA was signed.[109] In OAA Section 5.4(a), Lupin acknowledged indemnification agreements with Symbiomix's present and former managers.[110] Through June 2023, after the OAA closed and after Lupin caused Symbiomix to "be liquidated and dissolved," Lupin continued to acknowledge that Plaintiffs held rights under the IAs, and even agreed to indemnify Plaintiffs thereunder.[111] Lupin specifically acknowledged OrbiMed's continued indemnification and advancement rights, which could only be under the IAs and not

---

[109] *See* OAA § 2.24 (Symbiomix representing to Lupin as Parent "there are no . . . material obligations of the Company to officers, managers, Company Members (including any affiliates) or employees of the Company . . . other than . . . (e) the Indemnification Agreements"); *id.* § 5.4(a) (acknowledging indemnification and advancement rights "under the Company's bylaws (as in effect as of the date of this Agreement) and/or as provided in indemnification agreements between the Company and such M&O Indemnified Persons (as in effect as of the date of this Agreement) made available by the Company to Parent prior to the date of this Agreement (the 'Indemnification Agreements')").

[110] *Id.* § 5.4(a); Tr. 74 ("[I]t acknowledges the existence of indemnification agreements, which it goes on to define as the 'Indemnification Agreements,' which we acknowledge are Joint Exhibits 1 and 2 for Gupta and Veitinger.").

[111] Joint Stip. ¶¶ 15–18, 31; JX 41 at LUP_00004688–89; JX 90; JX 93 at LUP_00002893; JX 94; JX 98.

the OAA.[112]  Lupin also implicitly adopted the IAs by requiring Plaintiffs to submit undertakings pursuant to those agreements.[113]

Thus, the IAs' contemplated adoption of Symbiomix's obligations by a nonsignatory successor, and Lupin explicitly and implicitly assumed those obligations.

### D.    The OAA Does Not Replace The IAs.

Lupin argues it did not assume Symbiomix's full advancement obligations in the IAs, but rather extended them only for six years, relying on Sections 5.4(a) and 5.4(c) of the OAA.  Those provisions read:

> (a)    From and after the Effective Time until the sixth anniversary of the date on which the Effective Time occurs, Parent shall and shall cause Surviving Entity to (i) indemnify and hold harmless each present and former manager or officer of the Company (collectively, the "M&O Indemnified Persons") against any and all Damages incurred or suffered by any of the M&O Indemnified Persons in connection with any action taken in such individual's capacity as an officer or manager of the Company, whether civil, criminal, administrative or investigative, arising out of or pertaining to matters existing or occurring at or prior to the Effective Time, whether asserted or claimed

---

[112] *See* JX 78; JX 92 at LUP_00002984–88; JX 93 at LUP_00002896; JX 94; JX 98; Joint Stip. ¶ 31.

[113] *See Am. Legacy*, 831 A.2d at 349 ("[I]f the corporation accepts the contract's benefits, the corporation will be required to perform its obligations." (quoting 1A Carol A. Jones and Britta M. Larsen, *Fletcher Cyclopedia of the Law of Private Corporations* § 207 (perm. ed., rev. vol. 2002)); JX 43A at LUP_0001119–20; JX 90; JX 89; JX 91; JX 93 at LUP_00002893, 96.

prior to, at or after the Effective Time, to the fullest extent permitted under applicable Law and under the Company's bylaws (as in effect as of the date of this Agreement) and/or as provided in indemnification agreements between the Company and such M&O Indemnified Persons ( as in effect as of the date of this Agreement) made available by the Company to Parent prior to the date of this Agreement (the "Indemnification Agreements"), and (ii) advance expenses (including attorneys' fees) as incurred by any M&O Indemnified Persons in connection with any matters for which such M&O Indemnified Persons is entitled to indemnification from the Surviving Entity pursuant to this Section 5.4(a) to the fullest extent permitted under applicable Law; provided, however, that the M&O Indemnified Persons to whom expenses are advanced provides an undertaking to repay such advances if it is ultimately and finally determined by a court of competent jurisdiction (and all rights of appeal have lapsed) that such M&O Indemnified Persons is not entitled to indemnification under applicable Law, the Company LLC Agreement, any Indemnification Agreement, or pursuant to this Section 5.4(a).[114]

(c)    In the event that Parent, the Company or the Surviving Entity or any of their respective successors or assigns (i) consolidates with or merges into any other Person and shall not be the continuing or Surviving Entity or Entity of such consolidation or merger or (ii) transfers all or substantially all of its properties and assets to any Person, then, and in each such case, Parent shall ensure that the successors and assigns of Parent, the Company or the Surviving Entity, as the case may be, shall assume the obligations set forth in this Section 5.4.[115]

Lupin contends that these sections extended Symbiomix's indemnification obligations for six years after the OAA's Effective Time—until October 11, 2023.

---

[114] OAA § 5.4(a).

[115] *Id.* § 5.4(c).

But Lupin's indemnification and advancement obligations in OAA Section 5.4 are in addition to, not a replacement for, the obligations it assumed in the IAs. Lupin promised to provide "additional indemnity" for Symbiomix's managers "from and after [October 11, 2017] until the sixth anniversary of [October 11, 2017]."[116] Section 5.4 makes plain it is "in addition to, and not in substitution for, any other rights to indemnification or contribution that any such M&O Indemnified Person may have by contract or otherwise."[117] It offers indemnification "to the fullest extent permitted under applicable Law and under [Lupin's] bylaws ***and/or*** as provided in indemnification agreements" with the Manager Plaintiffs.[118]

Further, Section 19 of the IAs requires "supplements, modifications, terminations, or amendment" of the IAs to be "executed in writing by both parties,"[119] i.e., the Manager Plaintiffs and Symbiomix.[120] The Manager Plaintiffs

---

[116] OAA § 5.4(a); Tr. 96 (Lupin's deal counsel testifying Section 5.4(a)'s six-year term "means that . . . the sixth anniversary of the closing date, which I think would be October 11, 2023, is the end date. And after that, there's no *additional indemnity* required for damages" (emphasis added)).

[117] *Id.* § 5.4(d). Lupin's argument that this provision does not explicitly name the IAs, and therefore cannot encompass them, ignores the expansive categorical language that plainly encompasses the IAs.

[118] *Id.* § 5.4(a) (emphasis added).

[119] IA § 19.

[120] *Id.* at signature page.

are not signatories to the OAA.[121] The parties to the OAA could not restrict the Manager Plaintiffs' vested advancement rights under the IAs.[122] And nothing in Section 5.4 speaks to OrbiMed's indemnification or advancement rights; OrbiMed was never a Symbiomix "manager or officer."[123]

And so, Section 5.4(a) must be read as providing a new source of six years of indemnification for Symbiomix's present and former managers.[124] The OAA is in addition to, not a replacement for, the IAs' indemnification and advancement rights. Section 5.4(c) compels Lupin to ensure its own successors and assigns assume that new obligation.

Reading the IAs and the OAA together reveals the OAA fills a potential gap in the Manager Plaintiffs' rights under the IAs. As this letter has explained, the IAs only offered indemnification so long as the Manager Plaintiffs served as managers

---

[121] OAA at signature page.

[122] *See Javice v. JPMorgan Chase Bank, N.A.*, 2023 WL 4561017, at *2 (Del. Ch. July 13, 2023) ("[C]ontracting parties may not unilaterally eliminate vested rights of third parties.").

[123] OAA § 5.4(a); *Field Intell. Inc. v. Xylem Dewatering Sol. Inc.*, 49 F.4th 351, 358 (3d Cir. 2022) ("A later contract does not supersede an earlier one unless both concern the same subject matter' and the later agreement is so 'inconsistent' with the former 'that the two cannot stand together.") (internal quotation marks removed).

[124] OAA § 5.4(a).

of Symbiomix or were "subject to any current or future Proceeding."[125]  If the Manager Plaintiffs ceased serving and were not subject to a current or future Proceeding at that time, their IA rights would terminate.  If the Manager Plaintiffs later became subject to a Covered Event under the IA, they would not have any advancement or indemnification and advancement rights.  On the occasion of the Manager Plaintiffs leaving the Symbiomix Board, the OAA provided them with six years of coverage without that risk of termination.

By its own terms, the OAA's indemnification and advancement rights are in addition to, not in substitution of, the IAs' rights.

### E.     Plaintiffs Are Entitled To Fees On Fees.

Because Plaintiffs established they have advancement rights under the IAs, they are entitled to fees on fees.  "[W]ithout an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete."[126]  This is so for advancement cases as well.[127]  Although parties may contract around the "fees for

---

[125] IA § 14.

[126] *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) (holding "indemnification for expenses incurred in successfully prosecuting an indemnification suit are . . . authorized by law").

[127] *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *9 (Del. Ch. June 18, 2002), *aff'd*, 820 A.2d 371 (Del. 2003) (ORDER).

fees" requirement, the IAs reinforce it: it provides that if an indemnitee "seeks a judicial adjudication of [his] rights under" the IA, the Company shall advance fees on fees for that adjudication.[128] Lupin argues that because it paid Plaintiffs' expenses subject to the OAA's six-year restriction, Plaintiffs did not need to continue this enforcement action. But Lupin paid only after Plaintiffs filed suit, resisted its obligation to pay the costs of enforcement before it paid under the OAA, and resisted its obligations under the IAs, which are still and separately enforceable. And the New Jersey Action is still ongoing, and Plaintiffs face additional expenses. Plaintiffs are entitled to fees on fees.

### F.     The Path Forward

The parties appear to dispute the extent to which the New Jersey Action is a Covered Event. They also have not engaged on calculating interest, or on how to parse fees on fees for alternative counts. The parties shall stipulate to a procedure for presenting any disputes to the Court regarding payments already made and regarding interest, as well as to a *Fitracks* order for implementing Plaintiffs' right to advancement going forward.

---

[128] IA §§ 10(d), 12.

### III.    CONCLUSION

Judgment shall be entered for Plaintiffs on their Counts I and III, and on Lupin's counterclaim Count II.  The parties shall submit the requested proposed orders for the remainder of the case.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*